Norris, J.
Mary Durbin filed her petition in the common pleas of this county against the village of Napoleon, seeking to recover for injuries which she claims to have suffered without fault upon her part and wholly through the negligence of the defendant.
She says that on the evening of the 3rd of July, 1899, there was a hole in Clinton street in the village of Napoleon, which defendant village knowingly and negligently suffered to remain there, and for three months and more had neglected to repair, so as to make the street at said point reasonably safe for travel. The excavation was unguarded *162 and no light or signal of warning was provided and kept there to give notice that it was a place of danger.
On the evening of the 3rd of July, after dark, tvhile passing along said street at that point, without fault on her part, she fell into this hole and received injury for which she seeks to recover.
The defendant answers and makes denial, and says, that if plaintiff was injured it was through her own fault and negligence. This the plaintiff denies by her reply,
The issues thus made up came on for trial to a jury in common pleas, and after the plaintiff had submitted her evidence, the court upon motion of the defendant, arrested the evidence, and directed a verdict in favor of the defendant. The plaintiff’s motion for new trial was overruled and judgment was entered for defendant on the verdict so directed. Error is here prosecuted for reversal. '
The'reasons urged for reversal *e:
First: Error in rejecting evidence offered by the plaintiff.
Second: Error in arresting plaintiff’s evidence and directing verdict of the defendant.
Third: Error in overruling the motion for new trial.
The error relied on is, that the court was not warranted in arresting the evidence and directing a verdict.
The accident which resulted in plaintiff’s injury, happened in the night season, on Clinton street,at its intersection with Scott street, at a place where the village had not provided a street crossing. It is not disputed that there was an excavation at the point in Clinton street where the injury occurred, which had been made by the servants of the defendant in the driveway of the street some months before.
That it was there was well known, and had been known to the defendant, for a sufficient length of time in which to repair the street and make it safe. It was a defect in the street, and a dangerous one. That by walking into it one might sustain injury, is evidenced by the hurt which plaintiff received. The defect was at a place much used both by day and by night, and it was not barricaded or guarded so as to prevent one from stepping into it, or to warn one that it was a place of danger. And the plaintiff in attempting to cross the street after dark fell into the hole, so negligently suffered to remain there unguarded, and sustained *163 the injury of which she complains. Of all this there is no dispute.
The controversy here arises as to plaintiff’s knowledge of the existence of this dangerous place, and thus knowing, in not having taken proper care for her own safety; which defendant claims appears from the evidence by her introduced.
And as to whether in attempting to cross the street at a point where no crossing was provided by the municipality, she in so doing was guilty of negligence.
Defendant claims that the act of attempting to cross a street in a village at a place other than a street crossing, was of itself,without other fault or circumstances, a.n act of negligence, which precluded recovery for injury under such circumstances sustained.
As to the first proposition; whether or not she did know or had good reason to know of this dangerous place at the crossing of Clinton and Scott streets.
A Mr. Hughes, a witness called for the plaintiff, on cross-examination,in response to defendant’s question, says that plaintiff called his attention to this condition of the street a long time before the accident. Her conversation with Hughes had been so long before the injury, that the village, which at all times had knowledge of the defect, might with reasonable diligence, have in the meantime made the place safe. The conversation of itself would at once furnish ground for the following speculation: Had she under the circumstances presented by the evidence a right to presume that the village would with its ample opportunity to do so, repair this dangerous place, and had repaired it. Did it under the circumstances devolve upon her to carry in her memory the fact that a hole had been made in the street there, some months before. Whether she was or was not chargeable with remembering its existence; whether she had or had not the right to presume the city had made the place safe in the meantime, would be measured by time and circumstances and conditions, which altogether made it a question for the jury under proper instructions from the court. See the case of Kane v. The Northern Central Railway Co., 128 U. S., page 91. She swears that she did not know that the excavation was there *164 when she raceived her injuries by falling into it. So that there was some evidence that she was not aware of the condition of the street, and she had the right to have the matter submitted to the jury.
It is claimed upon authority of the proposition announced by the supreme court in the case of the City of Dayton v. Taylor’s Administrator, to be found in 62 Ohio St., at page 11, that to attempt to cross a street at a place other than a crossing, provided that pedestrians may go safely over, is an act of negligence per se.
It is conceded that the excavation at which plaintiff in this case received her injury, was in the street outside' of the curb and at a place where no street crossing was provided; yet at a point shown by the evidence, to have been by custom used to pass over Clinton street.
While a municipality does not insure its streets and public places to be free from danger, the law does require that they be kept in a condition that a person exercising ordinary care in passing over a street, may be reasonably safe from injury arising from its condition. It is true the court in the Dayton case, and speaking from the facts present in that case says, ‘‘a pedestrian who without necessity and for his own pleasure and convenience departs from the sidewalks and street crossings, upon which he would have avoided injury, and crosses a street intersection diagonally, and is injured by slipping into a catch basin, which lay between the crossings,must be held to have assumed the risks which lay in the path which he thus chooses,” But by no construction can that opinion be tortured into a declaration that a pedestrian takes his life in his hand and forfeits it to the negligence of a municipality, when he steps off the curb onto the driveway of a public street. Or that, in order not to share the responsibility for whatever might occur, or for whatever might be in the street through negligence of the city authorities, he must go to a crossing however far, and to whatever inconvenience it may put him, and there on a path to which the law gives character of sanctuary, cross the street and thank his stars that he is safely over,
In the Dayton case, as shown by the record, in the .night with the streets iced and slippery and dangerous, Taylor went diagonally across the street and made directly for a *165 catch basin. The catch basin was a part of the drainage system of the city of Dayton, and was guarde.d and made safe as well as the same might be.
W. W. Campbell, for Plaintiff in Error.
F. M. Hall, for Defendant in Error.
The only way Taylor could get into the catch basin was to slide into it. And he did slip down and did slip his legs into the catch basin, 62 Ohio St., page 17.
The application of that decision is to that state of facts. And its application is no broader than the facts presented in that case. In that case the city was no more responsible for Taylor’s injury than it would have been, had his injury been occasioned with contact with the slippery surface of the street when he fell.
The hole at the catch basin was an ordinary danger of a street reasonably well kept. The risk of injury there was the ordinary risk of a danger ever present upon a reasonably safe street.
In the case at bar the hole was'not the ordinary danger ever present in a street reasonably well kept. It was a danger which at the point where it existed, and as long as it did exist, destroyed the street itself for the purpose for which the street was dedicated and maintained. It was not an improvement and a necessity as was the catch basin. It was an unnecessary danger and obstruction and a menace and a nuisance. So that the case at bar is far from all fours with the Dayton case.
Viewing the record as we view it, we are of the opinion that the court was in error in taking the case from the jury and in directing the verdict.
While the jury probably upon this record would have returned the same verdict, yet the case should have been submitted, and not to do so was in prejudice of plaintiff’s rights.
We find no other error in the record. Judgment in the common pleas is reversed. A new trial is granted, and the case is remanded for new trial.